UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVEN R. ZANG,
and all others similarly situated,


                              Plaintiff,

                                                    <u>DECISION AND ORDER</u>

                                                    08-CV-6046L


                 v.


PAYCHEX, INC.,



                              Defendant.
_____


        This action was commenced in the United States District Court for the Eastern District of

Michigan in August 2007, and was transferred to this Court on January 30, 2008.  The action is

brought by Steven R. Zang, a trustee of the Luxon & Zang PC 401(k) Profit Sharing Plan & Trust

("Plan"), against Paychex, Inc., pursuant to the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1001 *et seq.*

        In short, plaintiff alleges that Paychex has contracted with the Plan's sponsor, Luxon & Zang

P.C., to provide certain services for the Plan, and that Paychex has violated ERISA in certain

respects, in general by placing its own financial interests ahead of those of the Plan, and by engaging

in transactions prohibited by ERISA.

Paychex has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Paychex's motion is granted, and the complaint is dismissed.

## BACKGROUND

According to the complaint, Paychex offers prospective plan sponsors a number of master or "prototype" plans to choose from. These are model, or form plans, which Paychex's client, the plan sponsor, can customize in some respects to suit its needs or preferences. Of particular relevance to this case, Paychex's prototype plans allow its client to decide which mutual funds will be offered to plan participants, from a menu of funds provided by Paychex. Complaint ¶ 7.

In addition to the fee payments that it receives from its client for its services, Paychex receives compensation from the mutual funds that the client selects from among the choices offered to it by Paychex. The complaint alleges that these payments, which are commonly known as "revenue-sharing" payments, are "for, purportedly, providing record-keeping and related services to the mutual funds," but that "[i]n reality, mutual funds pay Paychex so that Paychex will make such mutual funds available to clients who adopt a Prototype Plan sponsored by Paychex." Complaint ¶ 8.

Plaintiff also alleges that when a plan sponsor transfers funds to Paychex to be invested in the mutual funds that the sponsor has selected, Paychex temporarily moves those funds to a custodial account, which is maintained at a bank, pending completion of the purchase of mutual fund shares.

Plaintiff asserts that Paychex receives earnings from the financial institution at which that account is maintained, based on the amount of the funds in that account.

With respect to the particulars of this action, the complaint alleges that the Plan was established in 2000 pursuant to an "adoption agreement" supplied by Paychex. According to the complaint, "Zang is the employer, a trustee, a named fiduciary, and the plan administrator of the Plan," as well as a Plan participant. Complaint ¶ 26.[1]

The parties' administrative service agreement (Dkt. #3-8) contains a number of provisions that are of particular relevance here.[2] First, it expressly provides that Paychex is not a fiduciary with respect to the Plan. It states that both parties agree and acknowledge that "Paychex' [sic] services under this Agreement are limited to those of a recordkeeper and provider of non-discretionary administrative services at the direction of the Employer ... and that Paychex shall not be deemed a fiduciary as that term is defined in [ERISA] ... ." Dkt. #3-8 § II(F).

The agreement also states that both parties "acknowledge that the Employer has selected a menu of funds from a list of investment options identified by Paychex, and that Paychex has not

---

[1]The complaint states that the Plan is a successor to the Bohnenstiehl & Luxon P.C. 401(k) Profit Sharing Plan & Trust, which was adopted effective January 1, 2000 by Bohnenstiehl & Luxon P.C. Complaint ¶ 22. For purposes of the present motion, however, the parties do not distinguish between the predecessor and successor plans, but treat them as a single entity.

[2]In deciding a motion to dismiss under Rule 12(b)(6), a court may consider not only the complaint itself, but also documents that are incorporated into or referred to in the complaint. *See Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 64 (2d Cir. 2010); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991); *Cusack v. Delphi Corp.*, 686 F.Supp.2d 254, 256 (W.D.N.Y. 2010). In the case at bar, plaintiff's papers cite several of the documents that have been submitted by Paychex, *see*, *e.g.*, Plaintiff's Mem. of Law (Dkt. #28) at 5, and there appears to be no dispute that those documents are accurate copies of the relevant agreements.

provided investment advice with regard to any such selections." *Id.* § V(A). It further provides that "Paychex reserves the right to modify this list." *Id.* The agreement also provides, however, that before deleting or substituting a fund on the list, Paychex must give the employer at least sixty days' notice, and give the employer a "right to reject the change or terminate [the] Agreement ... ." *Id.* § V(A)(I).

The agreement expressly discloses the "revenue sharing" payments, stating that

[i]n consideration of [various] administrative services that Paychex provides, Paychex receives, or may receive, fees from one or more of the financial institutions that the Employer has selected as the investment vehicle for plan participant and/or employer contributions. The Employer consents to Paychex' receipt of such earnings as part of Paychex' compensation for its performance of services under this Agreement.

*Id.* § IV(C). Likewise, the agreement states that with respect to the custodial account described above, "the Employer understands that Paychex may receive, from the financial institution in which [the employer's] unprocessed contributions are maintained, earnings based on the amount of such unprocessed contributions." *Id.* § IV(B). The agreement states that "[t]he Employer consents to Paychex' receipt of such earnings as part of Paychex' compensation for its performance of services under this Agreement." *Id.*

Also in connection with the custodial account, the agreement states that both parties "acknowledge receipt of a copy of the Master Custody Agreement, which describes the services that the Plan will receive from the JP Morgan Institutional Trust Services unit of The Chase Manhattan Bank ... as temporary custodian of cash owned by the Plan in connection with Plan investments and other transactions." *Id.* § IV(A). The form agreement states that "[t]he Trustee, acting upon the

direction of the Employer, hereby appoints JP Morgan as custodian under the terms and conditions of the Master Custody Agreement." *Id.*[3]

The parties' retirement services agreement (Dkt. #27-10) provides that "Paychex transfers all Contributions to the Master Custody Account for processing. Generally, Contributions are transferred from the Master Custody Account to a non-interest bearing account of Paychex Services Corporation ... five (5) business days following the date that Paychex initiates the Contribution EFT [electronic funds transfer]." *Id.* § 15.

The complaint in this case is brought as a class action complaint on behalf of the Luxon & Zang Plan and all other plans for which Paychex provides plan administration and other services, for which Paychex has received revenue-sharing or other payments within six years preceding the filing of this lawsuit. Complaint ¶ 76. Plaintiff asserts three claims for relief.

The first cause of action asserts a claim under 29 U.S.C. §§ 1132(a)(2) and 1109(a), alleging that, notwithstanding the express contractual language to the contrary, Paychex acted as a fiduciary with respect to the Plan. Plaintiff alleges that Paychex breached its fiduciary obligations by "channel[ing] the Plan (and its other plan clients) into mutual funds and a bank that, unbeknownst to the Plan, were paying Paychex more than $20 million a year to be included on Paychex's prototype plan platforms." *Id.* ¶ 83. Plaintiff also alleges that Paychex placed its own financial interests ahead of those of plan participants by "steering client plans into a circumscribed set of mutual fund and bank account options on the basis of whether the mutual fund and bank were willing to make revenue-sharing and other payments to Paychex." *Id.* ¶ 84. Plaintiff alleges that as a result,

---

[3]As noted above, Zang was listed as both a trustee and the employer.

"the Plan's investments earned less than they would have otherwise earned if had [sic] the Plan been in invested [sic] in lower-cost funds such as Vanguard funds." *Id.* ¶ 86.

The second cause of action asserts that Paychex violated § 406(b) of ERISA, 29 U.S.C. §§ 1106(b)(2) and (b)(3), which respectively prohibit a fiduciary from "act[ing] in any transaction involving the plan on behalf of a party ... whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries," and from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." Plaintiff alleges that Paychex violated these provisions because it "acted for the benefit of its strategic mutual fund partners and Chase Manhattan Bank by steering its clients' pension fund assets to those mutual funds and the bank that paid Paychex fees." *Id.* ¶ 91. Plaintiff alleges that as a result of Paychex's acts, "the Plan's investments were reduced in direct proportion to the excessive mutual fund fees paid by the Plan and revenue-sharing and other payments to Paychex," and that "[t]he Plan also suffered lost investment opportunities." *Id.* ¶ 92.

Count III does not assert a separate theory of liability, or a substantive claim as such, but instead asserts a claim for equitable relief, based upon the violations alleged in Counts I and II, pursuant to 29 U.S.C. § 1132(a)(3). Plaintiff alleges that by engaging in the wrongful acts alleged in the previous two counts, "Paychex has caused the Plan losses, the full extent of which cannot be determined without an accounting." *Id.* ¶ 97.

Plaintiff's prayer for relief seeks declaratory and injunctive relief, including an order directing Paychex to "restore to the Plan all losses to the Plan resulting from these breaches," and to disgorge all "revenue-sharing payments and profits earned thereon," as well as "rescission of the Plan's

investments in mutual funds and bank account through Paychex prototype plans and the Master Trust

Bank account ... ." *Id.* at 22.


# DISCUSSION


## I. Statute of Limitations

Paychex first argues that Zang's claims are barred by ERISA's statute of limitations for

claims alleging a breach of fiduciary duty. The relevant statute, 29 U.S.C. § 1113, provides that

> [n]o action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of–
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. Paychex contends that the complaint itself, and the documents that it references,

establish that Zang had actual knowledge, no later than July 2002, of Paychex's practices that he now

contends constituted breaches of Paychex's fiduciary duties.

In *Caputo v. Pfizer, Inc.*, 267 F.3d 181 (2d Cir. 2001), the Court of Appeals for the Second

Circuit stated that

> a plaintiff has "actual knowledge of the breach or violation" within the meaning of ERISA § 413(2), 29 U.S.C. § 1113(2), when he has knowledge of all material facts necessary to

understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act. While a plaintiff need not have knowledge of the relevant law, he must have knowledge of all facts necessary to constitute a claim. Such material facts could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm.

*Id.* at 193 (internal quotation marks, citations and alterations omitted).[4]

The court in *Caputo* added that "the disclosure of a transaction that is not inherently a statutory breach of fiduciary duty cannot communicate the existence of an underlying breach." *Id.* Conversely, "where the transaction is facially illegal, awareness of the occurrence of the transaction itself does constitute knowledge of facts necessary to understand that breach of a fiduciary duty occurred." *Chao v. Emerald Capital Mgmt., Ltd.*, No. 01-CV-6356, 2006 WL 2620055, at *6 (W.D.N.Y. Sept. 13, 2006) (citing *Brown v. American Life Holdings, Inc.*, 190 F.3d 856, 859 (8th Cir. 1999)).

---

[4]In its initial brief, which was filed while this action was still in the Eastern District of Michigan (which is part of the Sixth Circuit), Paychex relied on the Sixth Circuit's holding in *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003), that "actual knowledge" requires only "knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute."

That differs slightly from the standard in the Second Circuit. As the Sixth Circuit noted in *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 520-21 (6th Cir. 2008), *Wright* "expressly declined to adopt" the position taken by the Second Circuit in *Caputo*. *See also Browning v. Tiger's Eye Benefits Consulting*, 313 Fed.Appx. 656, 661 (4th Cir. 2009) (stating that the Second Circuit is among those "that have settled on a definition [of 'actual knowledge'] fall[ing] somewhere between" the definition adopted by the Sixth Circuit in *Wright*, which requires only "knowledge of the facts or transaction that constituted the alleged violation," and that adopted by the Third and Fifth Circuits, which requires knowledge not only of the events that constitute the alleged breach, but also that those events support an ERISA claim for breach of fiduciary duty) (citing *Caputo*, 267 F.3d at 193). *But see Edes v. Verizon Comms., Inc.*, 417 F.3d 133, 141 (1st Cir. 2005) (stating that the alleged differences among the views of the other circuits are "exaggerated," and that the respective positions of the circuits are "much more nuanced").

In *Brown*, the court explained the rule in this way:

> In most cases, disclosure of a transaction that is not inherently a statutory breach of fiduciary duty cannot communicate the existence of an underlying breach. Therefore, when a fiduciary's investment decision is challenged as a breach of an ERISA duty, the nature of the alleged breach is critical to the actual knowledge issue. For example, if the fiduciary made an *illegal* investment–in ERISA terminology, engaged in a prohibited transaction–knowledge of the transaction would be actual knowledge of the breach. But if the fiduciary made an *imprudent* investment, actual knowledge of the breach would usually require some knowledge of how the fiduciary selected the investment.

190 F.3d at 859 (internal quotation marks and citations omitted).

In the case at bar, Count II does allege that Paychex engaged in prohibited transactions. Zang alleges that Paychex violated 29 U.S.C. §§ 1106(b)(2) and (b)(3) by "act[ing] for the benefit of its strategic mutual fund partners and Chase Manhattan Bank," and that "Paychex received consideration from mutual funds and the bank in the form of revenue-sharing and other payments based on plan transactions with mutual funds and the bank." Complaint ¶ 91.

I find, on the facts alleged here, that to the extent that the second cause of action is based upon Paychex's alleged revenue-sharing with Chase Manhattan Bank ("bank"), it is time-barred. Both the fact and nature of the revenue-sharing payments with the bank were fully disclosed in the administrative services agreement, and plaintiff's counsel conceded as much at oral argument. Zang thus had actual knowledge of those transactions when he entered into that agreement in July 2002.

The agreement fully disclosed that Paychex "may receive, from the financial institution in which [the employer's] unprocessed contributions are maintained, earnings based on the amount of such unprocessed contributions." *Id.* § IV(B). Plaintiff has not articulated any manner in which that statement is misleading or inaccurate.

The statutory bases for Count II, 29 U.S.C. §§ 1106(b)(2) or (b)(3), impose a "blanket prohibition" on transactions within its scope, irrespective of the fiduciary's reasons for engaging in the transaction, or of the consequences to the plan. *Reich v. Compton*, 57 F.3d 270, 287-88 (3d Cir. 1995). *See also Patelco Credit Union v. Sahni*, 262 F.3d 897, 911 (9th Cir. 2001) ("§ 1106(b) thus creates a per se ERISA violation; even in the absence of bad faith, or in the presence of a fair and reasonable transaction, § 1106(b) establishes a blanket prohibition of certain acts") (internal quotation marks omitted); *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987) (liability may be imposed under § 1106(b) "even where there is 'no taint of scandal, hint of self-dealing, no trace of bad faith') (citations omitted); *accord LaScala v. Scrufari*, 330 F.Supp.2d 236, 253-54 (W.D.N.Y. 2004). Therefore, under the case law cited above, disclosure of the fact of such transactions alone is enough to give actual notice of the alleged ERISA violation. The revenue-sharing arrangement with the bank was fully disclosed here, and thus any § 1106(b) claim arising out of those payments is time-barred.

The revenue-sharing payments from the mutual funds stand on a different footing. The administrative services agreement disclosed Paychex's receipt of fees from the mutual funds that the employer selected as investment vehicles for the Plan, but stated that those payments were made "[i]n consideration of the recordkeeping, shareholder servicing, marketing, and other administrative services that Paychex provides ... ." The agreement does not state to whom those services are provided, but since the mutual funds are said to pay fees "in consideration of" those services, the implication seems to be that the fees are paid by the mutual funds in return for administrative services rendered by Paychex to those funds.

The significance of this lies in the types of transactions that are prohibited by § 1106(b)(2) and (3), *i.e.* "act[ing] in any transaction involving the plan on behalf of a party ... whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries," and "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." While I am not convinced, at this point, that the complaint states a cause of action under § 1106(b)(2)–which "is commonly understood to 'prohibit[ ] a fiduciary from engaging in a self-dealing transaction,'" *Tibble v. Edison Int'l*, 639 F.Supp.2d 1074, 1093 (C.D.Cal. 2009) (quoting *Wilson v. Perry*, 470 F.Supp.2d 610, 623 (E.D.Va. 2007))–the nature of the transaction at issue, and the reason for the payments in question, clearly bear upon whether the transaction falls within the categories of transactions prohibited by § 1106(b).

If, in fact, the payments from the mutual funds were truly in consideration for, say, recordkeeping services rendered to the funds by Paychex, then the payments may not have been prohibited at all, since arguably they would not have been made in connection with a transaction involving plan assets. Plaintiff would thus have no claim based on such payments. Furthermore, even if such payments could be deemed to have been made in connection with a transaction involving plan assets, and thus prohibited, the parties' agreement would have fully disclosed those payments, and plaintiff's claim here would be time-barred.

The allegation, however, is that the payments were not made for the reasons stated in the administrative services agreement, but rather that they were, in effect, kickbacks to Paychex for including the funds in the menu offered to plaintiff. That was not disclosed in the parties' agreements.

- 11 -

While § 1106 may impose a blanket prohibition on certain types of transactions, thus rendering Paychex's good or bad faith irrelevant, for plaintiff to have been given "actual notice" of such transactions, he must still have been provided with enough information to understand the nature and reason for those transactions, so that he could know whether they were prohibited or not. *Cf. Beary v. ING Life Ins. and Annuity Co.*, 520 F.Supp.2d 356, 363, 368 (D.Conn. 2007) (contract prospectuses, which stated that defendant "may receive compensation from each of the funds or the funds' affiliates based on an annual percentage of the average net assets held in that fund by" defendant, constituted "complete disclosure by ING of all material facts regarding its receipt of revenue-sharing payments").

Thus, since the parties' agreements did not disclose the alleged basis for the revenue-sharing payments by the mutual funds, those agreements did not provide plaintiff with actual notice of the alleged § 1106(b) violation. Accordingly, the six-year limitations period of § 1113(1) applies, and this claim is not time-barred.

I also find that Count I is not time-barred. Count I is not based simply on the fact that Paychex received compensation from the mutual funds and the bank, but on Paychex's alleged failure to act in the best interests of the Plan and Plan participants. Plaintiff alleges that Paychex acted for its own benefit, by "steering client plans into a circumscribed set of mutual fund and bank account options on the basis of whether the mutual fund and bank were willing to make revenue-sharing and other payments to Paychex." Complaint ¶ 84.

Leaving aside for the time being the question of whether that states a facially valid claim, I conclude that this claim is governed by the general six-year limitations period of § 1113(1), and is

not time-barred.  Count I plainly depends on Paychex's motivation in selecting which funds to include in its menu of choices offered to its client plans, and at this point, the Court cannot find as a matter of law that Zang had actual knowledge of those motives simply by virtue of the disclosure of Paychex's receipt of payments from the mutual funds and the bank.  *See Brown*, 190 F.3d at 859 ("if the fiduciary [is alleged to have] made an *imprudent* investment, actual knowledge of the breach would usually require some knowledge of how the fiduciary selected the investment").  It is not enough that plaintiff could have surmised that Paychex may have been motivated by self-interest; he must have had actual knowledge that Paychex was so motivated.  *See Caputo*, 267 F.3d at 193 (with respect to actions that are not inherently in violation of ERISA, "it is not enough that [plaintiffs] had notice that something was awry; [plaintiffs] must have had specific knowledge of the actual breach of duty upon which [they sued]") (brackets in original).

## II. Fiduciary Status

Regardless of whether they were timely brought, however, all of plaintiff's claims in this action must be dismissed because on the facts alleged, Paychex could not be considered a fiduciary with respect to the Plan.  Since Paychex's fiduciary status is a necessary condition of all of plaintiff's claims, that is fatal to plaintiff's claims.

With respect to Count I, 29 U.S.C. § 1109(a) provides that "[a]ny person *who is a fiduciary* with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable" for harm to the plan occasioned by that

breach.  Likewise, § 1106(b), on which Count II is based, prohibits "[a] fiduciary with respect to a plan" from engaging in certain transactions.

ERISA provides that a person may be a fiduciary in several ways.  In relevant part, it states that

> a person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1022(21)(A).  "Thus, § 1002(21)(A) creates a bifurcated test: 'Subsection one imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted.  Subsection three describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised.'"  *Bouboulis v. Transport Workers Union of America*, 442 F.3d 55, 63 (quoting *Olson v. E.F. Hutton & Co., Inc.*, 957 F.2d 622, 625 (8th Cir. 1992)).

To determine whether a person or entity is a fiduciary under ERISA, courts employ a functional test that focuses on the nature of the functions performed rather than on the title held.  *See*, *e.g.*, *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997); *Haddock v. Nationwide Financial Services, Inc.*, 419 F.Supp.2d 156, 164 (D.Conn. 2006).  *But see Bouboulis*, 442 F.3d at 65 (noting that a formal title, such as "plan administrator," can still be relevant to determination of fiduciary status).  The possession or exercise of discretionary authority is key, since "someone who performs

purely 'ministerial' functions for a benefit plan is not a fiduciary." *Blatt v. Marshall and Lassman*, 812 F.2d 810, 812 (2d Cir. 1987).

In the case at bar, I note initially that the parties' administrative service agreement expressly states that Paychex is *not* a fiduciary with respect to the Plan. The agreement states that

> [i]t is the express intention of the Employer and Paychex that Paychex' services under this Agreement are limited to those of a recordkeeper and provider of non-discretionary administrative services at the direction of the Employer (or other authorized representative of the Plan) and that Paychex shall not be deemed a fiduciary as that term is defined under [ERISA]. Paychex shall not have, nor exercise, any discretionary authority, control, or responsibility with respect to the Plan assets or the administration of the Plan.

Dkt. #3-8 § II(F).

Because courts employ a functional analysis, that contractual provision is not dispositive, but it is nevertheless probative of the parties' intent and understanding. *See Mortgage Lenders Network USA, Inc. v. CoreSource, Inc.*, 335 F.Supp.2d 313, 318 (D.Conn. 2004) (stating that "a contractual disclaimer of a fiduciary relationship cannot be dispositive of whether such a relationship in fact existed," and that the court would therefore "view the contractual language [disclaiming the existence of a fiduciary relationship] as relevant to, but not determinative of, whether CoreSource was in fact a fiduciary to the MLN Plan").

Plaintiff puts forward several bases for his assertion that Paychex is a fiduciary, all of which turn on Paychex's alleged control over plan assets. First, plaintiff contends that Paychex has control over which mutual funds are available to the Plan for investment, and that Paychex receives compensation from the funds in which the Plan invests its assets. Plaintiff also alleges that "Paychex controls how long Plan assets are held" in the custodial account before those assets are invested in mutual funds, and that Paychex receives earnings from the bank based on the length of time that

those assets remain in the custodial account.  Third, plaintiff alleges in his brief (though not in the complaint) that "Paychex has pledged Plan assets as collateral for lines of credit issued to Paychex," Dkt. #46 at 5.  Fourth, plaintiff alleges that "Paychex advises its clients on selecting mutual funds." *Id.*

With respect to Paychex's control over which funds are made available to the Plan, subsequent to the filing of the parties' most recent briefs in this case, the Court of Appeals for the Seventh Circuit issued a decision in *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), *cert. denied*, 130 S.Ct. 1141 (2010), bearing upon that issue.[5]  In *Hecker*, several employees and participants in two employer-sponsored 401(k) plans sued a group of entities that performed various services for the plans, including providing investment advice, managing some of the plans' investment options, recordkeeping and other administrative services.  The plaintiffs argued that one of the defendants, Fidelity Trust, exercised the necessary control to confer fiduciary status by its act of limiting the employer's selection of funds to those managed by a related company, Fidelity Research.

Rejecting that argument, the court stated that it was aware of "no authority that holds that limiting funds to a sister company automatically creates discretionary control sufficient for fiduciary status," and that the agreement between Fidelity Trust and the employer "gives Deere [the employer], not Fidelity Trust, the final say on which investment options will be included.  The fact that Deere may have discussed this decision, or negotiated about it, with Fidelity Trust does not mean that Fidelity Trust had discretion to select the funds for the Plans." *Id.* at 583.  The court added that

_____

[5]Both parties have addressed *Hecker* by way of letter to the Court.

"[m]erely 'playing a role' [in the selection of investment options] or furnishing professional advice is not enough to transform a company into a fiduciary." *Id.* at 584.

I find *Hecker* persuasive, and I adopt its reasoning here. Plaintiff's allegation that Paychex controlled which mutual funds to make available to the Plan does not support its claim that Paychex is a fiduciary. Ultimately, it remained up to plaintiff to decide which funds to invest in, and in contrast to *Hecker*, Paychex did not even provide any investment advice to plaintiff. Even if Paychex could be said to have "played a role" in plaintiff's decision (by presenting him with a set of options), in the end, that decision was plaintiff's to make.

In addition, although Paychex did have some ability to modify the list of funds available to the Plan, the parties' agreement provided that before deleting or substituting a fund on the list, Paychex was required to give plaintiff at least sixty days' notice of the proposed change, and give the employer a "right to reject the change or terminate [the] Agreement ... ." Dkt. #3-8 § V(A)(I).[6] That does not bespeak fiduciary status on the part of Paychex. *See* Department of Labor Advisory Opinion 97-16A, 1997 WL 277979, at *5 (May 22, 1997) ("a person would not be exercising discretionary authority or control over the management of a plan or its assets solely as a result of deleting or substituting a fund from a program of investment options and services offered to plans,

---

[6]The agreement also provided that if the employer objected to the change, and Paychex did not withdraw the proposed deletion or substitution, the employer would have the right to terminate the agreement. Dkt. #3-8 § V(A)(iii). Despite the reference to the employer "reject[ing]" the change, then, it appears that the employer could not actually prevent Paychex from going ahead with a proposed deletion or substitution, and that ultimately the employer's remedy would be simply to terminate the agreement altogether. Nevertheless, it is clear that Paychex could not force the employer to accept any particular deletion or substitution.

provided that the appropriate plan fiduciary in fact makes the decision to accept or reject the change").

I also note, as did the *Hecker* court, that *Haddock v. Nationwide Fin. Servs.*, 419 F.Supp.2d 156 (D.Conn. 2006), which Zang relies upon, is materially distinguishable from the situations presented both here and in *Hecker*. In *Haddock*, the trustees of an employer-sponsored profit-sharing retirement plan brought a class action against a financial services provider, Nationwide, alleging that Nationwide violated its fiduciary duties by collecting revenue-sharing payments from the mutual funds that it offered to its annuity contract holders. The district court in *Haddock* denied Nationwide's motion for summary judgment, holding that genuine issues of material fact existed as to whether Nationwide exercised authority or control respecting the disposition of plan assets by controlling which mutual funds were available investment options for the plans and plan participants.

As the *Hecker* court noted, however, "the service provider in [*Haddock*] had the authority to delete and substitute mutual funds from the plan without seeking approval from the named fiduciary." 556 F.3d at 584. In that regard, the court said, *Haddock* was factually closer to its own prior decision in *Johnson v. Georgia*, 19 F.3d 1184 (7th Cir. 1994), in which the fiduciary both managed a defined-benefits plan and had ultimate authority over the selection of funds. *Id.*[7] Since the parties' administrative service agreement in the case at bar required Paychex to give plaintiff notice of any deletions or substitutions from the fund list, and gave plaintiff the right to reject the

---

[7]In a subsequent decision on a motion for class certification, the *Haddock* court likewise distinguished *Hecker*, noting that the plaintiffs in *Haddock* had "alleged that Nationwide has done more than "play[ ] a role" in investment decisions, and that they alleged, in effect, that "Nationwide ha[d] 'final authority':  the defendants have the power to permit or veto an investment option without the Trustees' input."  *Haddock*, 262 F.R.D. 97, 108 n.6.

change or terminate the agreement, *Haddock* is factually inapposite to this case, and plaintiff's reliance upon it is misplaced.

In addition, Paychex's mere creation and offering of a menu or lineup of funds cannot legally or logically give rise to fiduciary status. Those lists, or menus, are created prior to the existence of any contractual relationship between the parties. Paychex cannot be a fiduciary with respect to a plan with which is has no contractual relationship. *See* 29 U.S.C. § 1109(b) ("No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary"). The complaint itself alleges that when a plan sponsor contracts with Paychex, the sponsor first chooses one of several preexisting "prototype plans" developed by Paychex, and that when the client selects one of those prototypes, the client then decides, from a list of available funds, which funds to offer to plan participants. Complaint ¶¶ 5-7. At argument, plaintiff's counsel acknowledged that there were numerous fund families presented to plaintiff (six or seven) and each fund had numerous, different investment options. Plaintiff makes no claim that there were not enough investment options available for it. Paychex is free to design the various plan templates and investment menus to offer to prospective clients, who can then decide to contract with Paychex or not.[8] That does not make Paychex a fiduciary. *Cf. Pegram v. Herdich*, 530 U.S. 211, 226-27 (2000) ("The specific payout detail of the plan was, of course, a feature that the employer as plan sponsor was free to adopt without breach of,

---

[8]At oral argument, plaintiff's counsel advised that plaintiff still had a contractual relationship with Paychex in spite of this lawsuit.

any fiduciary duty under ERISA, since an employer's decisions about the content of a plan are not themselves fiduciary acts").

Plaintiff also alleges that "Paychex controls how long Plan assets are held" in the custodial account before those assets are invested in mutual funds. Plaintiff concedes that the parties' agreements provide that the assets are generally to be held in that account for only five days, but he argues that his provision is only "aspirational," and is not binding on Paychex, and that the assets could be held in that account for longer than five days. Plaintiff does not allege, however, that Paychex has actually held plan assets in the custodial account for more than five days.

As stated, under ERISA, a person is a fiduciary "to the extent [that] he *exercises* any authority or control respecting management or disposition of its assets ... ." 29 U.S.C. § 1022(21)(A) (emphasis added). Notably, then, the statute does not state that a person is a fiduciary if he *has* authority or control over plan assets, but only if, and to the extent, that he *exercises* such authority or control. *See LoPresti*, 126 F.3d at 40 (holding that defendant who commingled plan assets with company's general assets, and his use of those plan assets to pay company's creditors, meant that he exercised control over plan assets, but that other defendant who had signing authority for checking account, but never actually signed any checks nor actually exercised any other authority over the account, was not a fiduciary); *see also Mahoney v. JJ Weiser & Co., Inc.*, 339 Fed.Appx. 46, 48 (2d Cir. 2009) ("Our case law makes clear that 'a person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only to the extent that he has or exercises the described authority or responsibility'") (quoting *Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002)) (additional internal quotes omitted); *Chao v. Unique*

*Mfg. Co.*, 649 F.Supp.2d 827, 833 (N.D.Ill. 2009) ("A person who has authority over a plan's assets, but never exercises it, ... is not a fiduciary") (citing *LoPresti*).

The allegation that Paychex "controls" the length of time that plan assets remain in the custodial account, then, does not suggest that Paychex has actually exercised any control in that regard. There is no indication in the complaint that Paychex has deliberately kept plan assets in the account for a longer period of time, for its own benefit. *See Hecker v. Deere & Co.*, 569 F.3d 708, 710-11 (7th Cir. 2009) (denying petition for rehearing en banc, and noting that under *Iqbal* and *Twombly*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'-'that the pleader is entitled to relief'") (quoting *Iqbal*, 129 S.Ct. at 1950).

I recognize that "§ 1002(21)(A) creates a bifurcated test," and that "[s]ubsection three describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised." *Bouboulis*, 442 F.3d at 63. Unlike subsection one, however, which states that a person is a fiduciary if he "exercises any discretionary authority or discretionary control respecting management of such plan *or exercises* any authority or control respecting management or disposition of its *assets*," subsection three makes no mention of authority or control over plan assets, and instead provides that a person is a fiduciary if "he *has* any discretionary authority or discretionary responsibility in the *administration* of such plan." (Emphases added.)

There is no allegation here that Paychex has been granted discretionary authority or responsibility for the administration of the Plan in this case. Thus, subsection three does not apply.

Subsection one, by its terms, requires the exercise of discretionary authority or control, and there is simply no allegation in the complaint indicating that Paychex has exercised such authority or control with respect to the length of time that plan assets remain the custodial account.

As noted, the allegation that "Paychex has pledged Plan assets as collateral for lines of credit issued to Paychex," Dkt. #46 at 5, is not contained in the complaint, but in plaintiff's memorandum of law. In general, it is improper to set forth, in a brief, allegations that are not found in the complaint. *See Allah v. Poole*, 506 F.Supp.2d 174, 193 (W.D.N.Y. 2007); *Coveal v. Consumer Home Mortg., Inc.*, No. 04-CV-4755, 2005 WL 704835, at *7 (E.D.N.Y. Mar. 29, 2005); *but see Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997) (holding, under pre-*Twombly* standards, that in opposing a motion to dismiss, "a plaintiff may supplement the complaint with factual narration in an affidavit or brief").

Aside from that problem, however, the basis for that allegation is a statement in a Securities and Exchange Commission Form 10-K filed by Paychex for the fiscal year ended May 31, 2007 (Dkt. #28-2), that Paychex's "credit facilities are evidenced by Promissory Notes and are secured by separate Pledge Security Agreements [between Paychex and various lenders] pursuant to which we have granted each of the Lenders a security interest in certain of our investment securities accounts." That does not state that Paychex has used its *clients*' pension plan assets as collateral for its own debt.

Plaintiff's allegation that "Paychex advises its clients on selecting mutual funds" is likewise not found in the complaint, but in plaintiff's supplemental memorandum of law (Dkt. #46). The only citation given for that assertion is Paychex's Exhibit D, which is a copy of the parties' Human

Resource Service Agreement. That document expressly states that the "[c]lient acknowledges and agrees that Paychex is *not* rendering legal, tax, accounting, or investment advice in connection with the services to be performed." Dkt. #27-7 § 2 (emphasis added). This assertion is also contradicted by the Administrative Service Agreement, which states that "Paychex has not provided investment advice with regard to any such selections." Dkt. #27-8 § V(A).

In short, there are no factual allegations in the complaint making it even plausible that Paychex could be deemed a fiduciary with respect to the Plan and its participants. Accordingly, all of plaintiff's claims must be dismissed.

## CONCLUSION

Defendant's motion to dismiss the complaint (Dkt. #27-1) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        August 2, 2010.

- 23 -